E. V. HAUGHWOUT, President, and CHARLES L. TIFFANY, Treasurer, of the Broadway Association, Respondents, v. THE MAYOR, ETC., OF THE CITY OF NEW YORK, Appellants.

Where parties formed themselves into a voluntary association for clean-ing Broadway in the city of New York, and thereafter applied for and obtained the passage of a resolution by the common council directing the comptroller to draw his warrant in favor of such asso-ciation for a balance due to the contractors with said association, who did the work, it was *held*, that such resolution was in violation of the city ordinances relating to work done or to be done for the cor-poration.

The ordinance requiring all work to be performed by contract, and these contracts to be authorized by the common council, implies that the con-tract is to precede the execution of the work.

Further, the duty of making such contract, is by law committed to the street inspector, and, it *seems*, could not be legalized by the common council without his intervention.

Whether the work, having been performed voluntarily by an association of merchants, was done *at all* for the corporation, so as to form any con-sideration for the resolution, *quere*.

IN June, 1857, Broadway, in the city of New York, having received so little attention from the street cleaning department of the city as to have become filthy, the merchants and business men on that thoroughfare took the matter, in part, in their own hands, and formed an association known as the Broadway association. The city government had provided for cleaning that street but twice a week, though the duty of cleaning it during the night once each day was self-imposed on the city by one of its own ordinances.

This Broadway association supplied the defect, the asso-ciation cleaning the street four nights and the corporation two nights per week. Under this arrangement Broadway was cleaned six times per week from July 14, 1857, to July 14, 1859.

The Broadway association paid $11,000 to the contractor, leaving a balance due him from it of $7,720. The manure

gathered in these cleanings was valuable, and was deposited on the city dumping-grounds, the city having the benefit of its sale and disposition.

The plaintiffs, then officers of and representing the Broadway association, petitioned the common council to pay the deficiency of $7,720. The common council, by a three-fourths vote in each body, adopted the following resolution:

"*Resolved*, That the comptroller be, and he hereby is, directed to draw his warrant in favor of E. V. Haughwout, president, and C. L. Tiffany, treasurer, of the Broadway association, for the sum of $7,720, to pay for balance due contractor for cleaning Broadway, from 14th July, 1857, to 14th July, 1859, and charge the same to its appropriate account."

The comptroller, on demand made of him, declined to pay the money as required of him by the resolution.

The action was tried before a judge, in the New York Common Pleas (a jury being waived), and judgment in the plaintiffs' favor for the amount claimed, with interest and costs—in all, $9,338.87—was rendered on the 19th of June, 1863.

The defendants appealed to the General Term, and the judgment was there affirmed, and they then appealed to this court. The case is submitted on printed arguments.

*L. R. Marsh*, for the plaintiffs.

*R. O'Gorman*, for the defendants.

PECKHAM, J.   It is not pretended that the defendants ever employed the plaintiffs, directly or indirectly, to do this work. It was never done on the credit of the defendants. It was done upon the expresss arrangement that the association of which the plaintiffs were the officers should raise the money by subscription and pay it. Failing to raise the money as anticipated, they then petitioned the defendants to pay it, and they adopted a resolution to that effect. The question is, is that resolution obligatory, and sufficient to sustain this action?

The defendants' counsel introduced in evidence on the trial certain ordinances of the city of New York, whereby it was provided that " all work to be done for the corporation shall be performed by contract;" that all such contracts must be authorized by the common council, and then shall be made by the department under whose direction the work is to be performed; that " no contract shall be made, signed, or executed, until proposals therefor have been advertised, and estimates received and decided upon, as provided by this ordinance, except where otherwise provided by law; nor shall contracts be made, begun, or executed for a sum exceeding $250, until all the proposals, estimates, contracts and papers relating thereto shall have been laid before the common council and confirmed by them, and an appropriation made therefor." This is the substance of all these provisions, so far as applicable.

It is, perhaps, questionable whether they apply to this case at all. There was no work done or to be done " for the corporation."

This association, composed of merchants, owners and occupants, did this work for themselves, voluntarily, and upon their own responsibility, and in no sense " for the corporation," though the public participated in its benefits.

If the visitors at the Central park, to gratify their taste, had placed statuary or any other ornament there, as a present to the city, and the city had accepted the gift, they might call that furnishing supplies to the city and ask for payment, as well as the plaintiffs can call this work done for the defendants.

It is not free from difficulty to make this " work done for the corporation," so as to form any consideration for this promise or resolution.

But, assume it to be otherwise obligatory, was this work done in direct violation of the law in reference thereto?

It is insisted that this resolution, having been adopted by " a vote of three-fourths of the members elected to each board," which, by the statute, might dispense with a contract as to " work necessary to be done to complete or perfect

a particular job," was equivalent to a similar vote before the work was done; that such a vote dispensed with the necessity of a contract; that a subsequent ratification is equal to a prior legal employment.

I think that that provision applies only to "work necessary to be done to complete or perfect a particular job," not to work of a general character, not to a whole job, not to a new, original undertaking, but only to a job partly finished, and where something is necessary to its completion. This is not that case.

The statute is express that "all contracts to be made or let by authority of the common council for work to be done," etc., shall be made by the appropriate heads of departments, under such regulations as shall be established by ordinances of the common council. Then follows the provision before referred to. The statute then proceeds to make general provision for all cases with the exception and qualification before mentioned, and says: "And all contracts shall be entered into by the appropriate heads of departments, and shall be founded on sealed bids or proposals made in compliance with public notice advertised in such of the newspapers of the city as may be employed by the corporation for the purpose." (Laws of 1857, p. 886, § 38.)

Again, if the qualification in the statute "unless by a vote of three-fourths of the members elected to each board it shall be ordered otherwise," could be made to apply to a job like this, it seems to me the policy of the law, as well as the language of the act, required that vote to precede the doing of the work. The act is express, even according to the plaintiffs' interpretation, that no work shall be done for the corporation except by contract, unless that contract shall be waived by a three-fourths vote. It was not waived here. It was neither by contract nor under any waiver of a contract. Then it was clearly done in violation of the law.

It rests with the plaintiffs to establish that a vote, after the work was done, might waive the illegality and make that lawful by relation which was before illegal and in direct violation of the statute. The policy of the statute is in a

contrary direction.    It intended to insist upon a contract in all cases, unless in one  special case the councils should order it to be done otherwise.    The necessity for its being so done should be first passed upon by the councils.

The pressure for such a resolution would be far stronger after than before the work, and much more difficult to resist. Hence, contracts for work under such a rule would soon be the exception, not the rule of practice.

Under the statute before cited, I am quite clear that the duty of making this contract in the manner specified in the statute was committed to the street inspector.    The work was done without any such contract, and in direct violation of the statute regulating the doing of such work.    In such case no subsequent ratification of the common council can give the party any claim to compensation.

We are referred to *Peterson* v. *The Mayor, etc., of New York* (17 N. Y. 449) as sustaining the position of the plaintiffs.    The court there held that the work done in that case was not within the aim of the statute ; that the services might have been lawfully rendered at the expense of the city by a person directly employed by resolution of the common council, or by any express or implied authority ; but held that where the charter or a statute binding upon the corporation has committed a class of acts to particular officers or agents, other than the general governing body, or where it has prescribed certain formalities or conditions to the performance of any description of corporate business, the  proper functionaries must act and the  designated terms must be observed, and generally no act of recognition can supply a defect in these respects. (Id., 17 N. Y., 454, per DENIO, J.) *The People* v. *Flagg* (17 N. Y., 584) holds no different doctrine.

The same doctrine is held in *Donovan* v. *The Mayor, etc., of New York* (32 N. Y.), where Mr. Justice PORTER remarks that the city has no power to act except through its municipal officers, and where they assume as its agents, to exercise authority in disregard of prohibitions applying alike to them and their principal, their action is wholly ineffectual unless

it be to subject them to personal liability for assuming powers with which the law has not clothed them.

In *Harlem Gas Co.* v. *The Mayor of New York*, this court held that the supply of gas was not within the purview of the statute requiring advertisements and bids. I am unable to find any principle that will sustain this judgment. The judgment should be reversed, and a new trial ordered, with costs to abide the event.

All the judges concurring,

Judgment accordingly.